# Exhibit 3

SO ORDERED

Dated: February 15, 2021

*Daniel P. Collins*

**Daniel P. Collins, Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>**POTENTIAL DYNAMIX LLC,**<br><br>**Debtor.**<br>**TIMOTHY H. SHAFFER, Chapter 11 Trustee,**<br>**Plaintiff**<br>v.<br>**AMAZON SERVICES LLC,**<br>**Defendant.** | Chapter 11 Proceedings<br><br>Case No.: 2:11-bk-28944-DPC<br><br>Adversary No.: 2:13-ap-00799<br><br>**UNDER ADVISEMENT ORDER RE LIMITATION OF LIABILTY CLAUSE** |

Before this Court is Defendant Amazon Services LLC's ("Amazon") Motion for Partial Summary Judgment[1] ("Motion") requesting the Court enforce the limitation of liability clause (the "Clause") in the Amazon Services Business Solutions Agreement[2] (the "Agreement"). Plaintiff Timothy H. Shaffer, Chapter 11 Trustee ("Trustee"), filed his Response[3] in opposition and Amazon filed its Reply[4]. The Court, having heard oral arguments on the Motion on February 11, 2021, now denies the Motion because, under the circumstances of this case, the Clause is unclear and unreasonable, at the time the parties executed the Agreement damages were not

---

[1] DE 272. "DE" references a docket entry in this adversary proceeding 2:13-ap-00799-DPC ("Adversary Proceeding").
[2] The Agreement is attached as Ex. I in DE 275. The Clause is contained in ¶ 8 of the Agreement.
[3] DE 303.
[4] DE 322.

1

unascertainable and enforcing the Clause in this Adversary Proceeding would violate public policy.

### I. BACKGROUND

In the Trustee's Complaint[5] against Amazon, the Trustee seeks, among other things, damages due to Amazon's alleged breach of its Agreement with Potential Dynamix, LLC ("Debtor"). In its Motion, Amazon argues that, even if the Trustee can prove his claims at trial, the damages are limited to $2,206,369.[6] In support of this proposition, Amazon cites the last sentence of the Clause which states:

> FURTHER, OUR AGGREGATE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED WILL NOT EXCEED AT ANY TIME THE TOTAL AMOUNTS DURING THE PRIOR SIX MONTH PERIOD PAID BY YOU TO AMAZON IN CONNECTION WITH THE PARTICULAR SERVICE GIVING RISE TO THE CLAIM.[7]

Relying on Delaware case law[8], Amazon suggests limitation of liability clauses between two business like Amazon and the Debtor are routinely enforced when they are clearly written, where damages were uncertain at the time of contracting, and when the limitation is reasonable.[9] Amazon argues that the Clause was clear, and it was written in all capital letters. Amazon also suggests any potential claimed damages were uncertain at the time of the Agreement "because the parties could not predict the amount of any claims that might arise, given the thousands of inventory units and transactions involved and the many years that have passed."[10] Finally, Amazon contends the damage limitation in the Clause "is reasonable because the Trustee now seeks to recover far more than the amount he alleged in the Complaint.".[11]

---

[5] DE 1.
[6] DE 272, pg. 14. In its Statement of Facts (DE 273, §61), Amazon cites the Declaration of E. Weiant Williams for the proposition that "[i]n the six months preceding the action, January 2013 through June 2013, the fees the Debtor paid to Amazon related to its participation in the FBA program was $2,206,370."
[7] DE 275, Ex. I § 8.
[8] *Donegal Mut. Ins. Co. v. Tri-Plex Sec. Alarm Sys.*, 622 A.2d 1086, 1090 (Del. Super Ct. 1992); *Column Form Tech., Inc. v. Caraustar Indus., Inc.,* 2014 WL 2895507, at *5 (Del. Super. Ct. 2014).
[9] DE 272, pg. 14 lns. 25-28 and pg. 15 lns. 1-4.
[10] DE 272, pg. 15 lns. 9-11.
[11] DE 272 pg. 15 lns. 11-12.

The Trustee responds arguing: (1) the general terms of the Clause do not override Amazon's specific duties and liabilities under Section F-4 of the Agreement and that the Agreement does not contain a liability limitation; and (2) the damage limitation is unreasonable and unconscionable.[12]

## II.   GOVERNING LAW

Amazon points to Delaware law in support of its request that the Court's enforce the Clause.[13] Amazon notes in its Reply that the Trustee does not challenge the application of Delaware law.[14] However, the Clause is a part of the Agreement and the Agreement explicitly states elsewhere that "the laws of the State of Washington . . .."[15] govern the Agreement. Washington law, not Delaware law, governs the enforceability of the Clause.

## III.   THE CLAUSE DOES NOT CONFLICT WITH SECTION F-4 OF THE AGREEMENT

The Trustee argues the Clause is a general provision which conflicts with, and must be read as subordinate to, the specific language of Section F-4 of the Agreement. That provision states:

> Payment of the Replacement Value is [Amazon's] total liability for any duties or obligations [Amazon] or [its] agents or representatives may have as a bailee or warehouseman, and [Debtor's] only right or remedy that [Debtor] may have as a bailor.[16]

The Trustee contends this specific language overrides the general language of the Clause and its limitation of damages. This Court disagrees. Section F-4 tells this Court the Debtor's damages are measured by Replacement Value when Amazon loses, destroys, misplaces, etc. Debtor's inventory.[17] The Clause, however, indicates that damages claimed by Debtor, however measured,

---

[12] DE 303, pg. 11-15.
[13] Weiss Declaration, Ex. I, § 8 (DE 272, pg. 14-15).
[14] DE 322, pg. 4 n. 2 (DE 322), which directs to DE 273, ¶ 15 (Amazon's Statement of Facts).
[15] DE 275, Ex. I.
[16] DE 275, Ex. I, Section F-4.
[17] DE 275, Ex I, Section F-4.

3

are limited to 6 months' worth of fees paid to Amazon.[18] The Court reads the Clause and Section F-4 to work in harmony.

### IV. ENFORCEMENT OF LIABILITY LIMITATION CLAUSES

In the Trustee's second argument, he points to the Restatement (Second) of Contracts, §208, which he asserts Washington courts follow.[19] The Trustee contends that, under the Restatement, the damage limitation is unconscionable because the Agreement was a standardized form, was not negotiated, not signed by either party, binds a party merely by use of the services, and has a damage limitation that is one sided, unreasonably restrictive and unilaterally limits only Amazon's liability.[20]

Under Washington case law, "limitation of liability" or "exculpation" clauses are enforceable unless they are inconspicuous, involve liability for acts falling below the gross negligence standard, or the clause violates public policy.[21] Amazon contends that the Clause is clear and conspicuous because it is written all in capital letters. While it is true this writing is all capped, capitalized lettering does not alone make the Clause clear. The Trustee correctly points out that the Clause's 6-month look back on fees paid to Amazon is not connected to a specified beginning or end date. Amazon chooses to peg its 6-month calculation of capped damages from the time this Adversary Proceeding was commenced (July 2013) and then count back 6 months to January 2013. Nothing in the Clause supports that 6-month window of time as the correct time frame for the measurement of Debtor's damages. The Trustee suggests the 6-month look back period would commence every time the Debtor was damaged by Amazon. This approach too is not clearly mandated by the Clause. In short, the Clause is unclear on a fundamental point, namely, how does one apply what facially appears to be a mechanical formula to measure and cap damages. The Clause violates the 1st of the 3 requirements to enforce an "exculpation" or "limitation of liability" clause under Washington law.

---

[18] DE 275, Ex. I §8.
[19] DE 303, pg. 14 lns. 6-12. In asserting Washington follows the Restatement, the Trustee cites to *Adler v. Fred Lind Manor*, 103 P.3d 773, 782 (Wash. 2004).
[20] DE 303, pg. 14 lns. 13-21.
[21] *Riley v. Iron Gate Self Storage,* 198 Wash. App. 692, 701, 395 P.3d 1059, 1065 (2017).

Next, Washington law requires an evaluation of whether the Clause would absolve a breaching party for acts falling below the gross negligence standard. The Clause is indiscriminate as to what type of acts cap the damages. Whether the Agreement is breached by Amazon's unwitting missteps, ordinary negligence, gross negligence, intentional wrongdoing or through its bad faith motivated by evil intent matters not. The Clause caps Amazon's exposure to 6 months' worth of fees paid to it by the Debtor. It is worth noting that this liability cap is unrelated to the damages or harm the Debtor might suffer due to Amazon's breach of the Agreement. Rather, it is simply a measure calling for Amazon's disgorgement of its own revenue and then only over a brief period of the parties' contractual relationship. This limitation is unreasonable and violates Washington's 2nd of the 3 requirements which must be satisfied before the Clause is enforceable.

Finally, Washington courts apply a 6-factor balancing test to determine whether a contract provision violates public policy.[22] If more of the 6 factors appear in a given exculpatory agreement, the agreement is more likely to be declared invalid on public policy grounds.[23] Washington's 6-factor balancing test is as follows:

> (1) the agreement concerns an endeavor of a type generally thought suitable for public regulations;
> (2) the party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public;
> (3) such party holds itself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards;
> (4) because of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks the services;
> (5) in exercising a superior bargaining power, the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence; and
> (6) the person or property of members of the public seeking such services must be placed under the control of the furnisher, subject to the risk of carelessness on the part of the furnisher, its employees, or agents.[24]

---

[22] *Id.* 198 Wash. App. at 701-02, 395 P.3d at 1066.
[23] *Id.* Quoting *Wagenblast v. Odessa Sch. Dist. No. 105-157-166J,* 110 Wash. 2d 845, 852 (1988).
[24] *Id.* 198 Wash. App. at 702, 395 P.3d at 1066.

Factor 5 requires a finding of an adhesion contract. Washington courts consider the following in determining whether a contract is an adhesion contract: "(1) whether the contract is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other on a take it or leave it basis, and (3) whether there was no true equality of bargaining power between the parties."[25]

The Clause satisfies a majority of the factors listed above. The Court addresses the factors in order.

1. Amazon operates in a regulated industry and must comply with a myriad of statutory and regulatory requirements.

2. Amazon is the dominant online platform for internet sales of most any product one can imagine. One can argue that Amazon provides an essential or necessary public service, especially during the current pandemic.[26]

3. Amazon holds itself out to the general public as willing to sell its services to any member of the public who seeks it, subject to certain limitations.

4. Whether or not Amazon's platform is considered essential, it does possess a decisive advantage of bargaining strength. Although the Debtor could have taken its business elsewhere if they disagreed to the provisions found in the Agreement, there really is no comparable internet-based channel it could have used to sell its tens of thousands of products. In the world of e-commerce, Amazon is THE go-to online shopping platform.  That said, the Debtor did nominally have the option of taking its business elsewhere.

5. The Agreement was a standardized form that bound a customer to its terms merely by using Amazon's services. There was no possibility or hope of Debtor modifying any terms or provisions in the Agreement, there could be no negotiation, and no signatures were required. The Agreement was truly a "take it or leave it" proposition. The Agreement is an adhesion contract.

6. Under the Agreement, Amazon gained exclusive control over the Debtor's inventory. This fact placed the Debtor under the tight control of Amazon.

---

[25] *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 103 P.3d 753 (2004).

[26] "A common thread runs through those cases in which exculpatory agreements have been found to be void as against public policy … they are all essential public services – hospitals, housing, public utilities, and public education." *Shields v. Sta-Fit, Inc.*, 79 Wash. App. 584, 589 (1995).

At least 5, and possibly 6, of the Washington factors point towards recognition that its public policy is violated by the liability limitation contained in the subject Clause of the parties' Agreement. Accordingly, this Court finds the Clause is unenforceable as violative of Washington's public policy and violates the 3rd requirement if the Clause were to be enforceable.

In summary, none of the legal perquisites found in Washington's case law are present for this Court to enforce the terms of the Clause.

## V. ENFORCEMENT OF LIQUIDATION CLAUSES

This Court views the Clause as a "limitation of liability" or "exculpation" clause, but this Court recognizes it could also be categorized as a liquidated damages provision. Black's Law Dictionary defines a liquidated damages clause as: "a contractual provision that determines in advance the measure of damages if a party breaches the agreement."[27] The last sentence of the Clause reads as a liquidated damages provision because, in advance of any breach of the Agreement, it determines the measure of damages.

Under Washington case law, the test for determining the enforceability of liquidated damages clauses is: "(1) the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach, and (2) the harm must be such that it is incapable or very difficult of ascertainment."[28]. Washington's Supreme Court follows the United States Supreme Court's view that liquidated damages agreements fairly and understandingly entered into by experienced, equal parties with a view to just compensation for the anticipated loss should be enforced.[29]

In no way does the Clause suggest a reasonable forecast of Debtor's damages should Amazon breach the Agreement. Instead, the Clause relates only to Amazon's gain, not Debtor's loss.

As to the difficulty in ascertaining Debtor's damages in the event of Amazon's breach, at the time of contracting, given access to correct data and the application of the necessary

---

[27] Liquidated Damages Clause, Black's Law Dictionary (11th ed. 2019).
[28] *Salewski v. Pilchuck Veterinary Hosp., Inc., P.S.*, 189 Wash. App. 898, 908–09, 359 P.3d 884, 890 (2015).
[29] *Walter Implement Inc. v. Focht*, 107 Wash. 2d 553, 558, 730 P.2d 1340 (citing *Wise v. United States,* 249 U.S. 361, 39 S.Ct. 303, 63 L.Ed. 647 (1919)).

1  mathematical equations, damages could have been ascertainable because one would apply the
2  Replacement Value of inventory lost, misplaced, damaged, etc. Moreover, while the parties may
3  have both been experienced at time of entering the Agreement, they were hardly equals. Amazon
4  does not dispute the disparity in the bargaining power of the parties nor does it suggest the
5  Agreement was or could have been negotiated by Debtor. Amazon is one of the largest, most
6  technologically savvy and dominant forces in the commercial world. The Debtor was a seller of
7  supplements and personal-care products. Debtor was just a single customer in Amazon's vast
8  network of customers.

9  　　　Even were this Court bound to apply Delaware law, as Amazon suggests, the Court finds
10 the Clause is unenforceable because it fails to meet the criteria set forth by Delaware case law.
11 As noted above, the terms of the Clause are not clearly stated, and the damage limitation is
12 unreasonable. Significantly, the damages limitation was unilateral and was in no way related to
13 the actual damage the Debtor could suffer at Amazon's hands. Yet Amazon argues the Clause is
14 reasonable "because the Trustee now seeks to recover far more than the amount he alleges in the
15 Complaint." This perceived problem, of course, relates to the pleadings and discovery issues
16 raised elsewhere in Amazon's papers but in no way relates to the reasonableness of the Clause.

17 　　　Amazon suggests that, at the time the parties entered into the Agreement, any damages
18 that might be caused by Amazon under the Agreement could not be predicted given the thousands
19 of inventory units and transactions involved and the many years of the parties' contractual
20 relationship. The fact that there might be millions of transactions involving tens of thousands of
21 units placed with Amazon over many years of business with the Debtor does not make the
22 measurement of damages uncertain or incapable of being fairly and accurately measured. Yes, it
23 would take (and apparently has taken) an extensive review of historical documents and data plus
24 application of certain mathematical formulas but that does not make it impossible to calculate
25 damages nor would it leave the damages calculations uncertain. For example, if Amazon lost or
26 destroyed a certain amount of Debtor's inventory or failed to pay Debtor for units sold or did not
27 pay Debtor where sales were refunded by Amazon to a buyer, but Amazon did not require the
28 buyer to return the product, then Debtor might be entitled to damages from Amazon measured by

1   Replacement Value.[30] There might be thousands of such instances of damage but this would not
2   make the measure of damages uncertain or impossible to ascertain. Rather, it would make those
3   damages annoyingly tedious (and probably expensive) to ascertain. There is a big difference.
4   Here, at the time of the contract, damages under the Agreement could be readily ascertained given
5   enough time and effort devoted to doing so. Put another way, viewed from the date the Agreement
6   was entered into, determining damages was never a going to be speculative matter but, rather, a
7   matter of producing the available data and applying mathematical elbow grease to the data. This
8   Court finds that damages were NOT uncertain at the time the parties entered into the Agreement.

9   Because the Clause unreasonably limits damages and because the parties have always
10  been massively unequal in both power and reach, the Court concludes that, under Washington
11  case law, the liquidated damages provision built into the Clause is unenforceable. If Delaware
12  law was applicable to this question, this Court's answer would not be any different. Finally, the
13  Court will resist the temptation to salvage any portion of the Clause or apply its perceived intent
14  by unilaterally tailoring the Clause to the Court's own notion of more reasonable terms.

16  **VI.   CONCLUSION**
17  Based on the foregoing, the Court DENIES the Motion.

19  **DATED AND SIGNED ABOVE.**

---

[30] DE 275, Exhibit I, Section F-4.