# EXHIBIT A

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
ARBITRATION TRIBUNAL

| | |
|---|---|
| TAYAYDD123,<br><br>Claimant,<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br><br>Respondent.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     ICDR Case No. 01-22-0000-2001 |

## FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into on February 7, 2020 between the above-named parties and having been duly sworn, and having heard the proofs and allegations of the parties do hereby render this FINAL AWARD as follows:

I.     INTRODUCTION

This dispute arises from the closure of Claimant Tayaydd123's ("Claimant" or "Tayaydd123") Amazon.com's selling account by Respondent Amazon.com Services LLC ("Respondent" or "Amazon") and its withholding of $105,687.71 of funds in Claimant's account.

An evidentiary hearing was held remotely by agreement of the parties on April 11, 2023, with the parties designating Seattle, Washington as the hearing locale.  Adam

Urbanczyk of AU LLC represented Claimant.  Mark C. Burnside and Jean Fundakowski of Davis Wright Tremaine LLP represented Respondent.

## II.      JURISDICTION

Jurisdiction arises from the parties' arbitration agreement, which provides, in pertinent part:

> . . . **Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court**, . . . . The arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules.

*Amazon Business Solutions Agreement* (the "BSA") at ¶ 18 (emphasis in the original).

## III.     THE PARTIES

Tayaydd123 was an online store that operated as a third party seller on the Amazon.com website from February 7, 2020 until Amazon deactivated it on May 6, 2020. Tayaydd123 is owned by Yunnan Duobang Network Technology Co., Ltd., ("Yunnan") a Chinese limited liability company.  Yunnan is a natural person sole proprietorship, owned by Li Xiaojun ("Li").

Amazon operates a well-known online store.  It sells products directly to consumers and also allows third-party sellers, like Claimant, to sell products through its website.  Amazon also provides fulfillment services; *i.e.*, it offers to manage third party sellers' logistics, including inventory storage and delivery to consumers.  Third party sellers can also manage their own fulfillment services.  Claimant opted to manage its own fulfillment services.

2

IV.     THE PARTIES' CONTENTIONS

Claimant contends that Respondent wrongfully deactivated its account and withheld funds it had earned through the sale of its products. It seeks return of the $105,687.71 withheld funds. For the first time at the hearing, it requested relief in the form of reactivating its Amazon selling account. In its Demand, Tayaydd123 asserted causes of action for 1) Breach of Contract; 2) Breach of the Covenant of Good Faith and Fair Dealing; 3) Restitution/Money Had-and-Received; 4) Conversion; and 5) Unfair Business Practices pursuant to RCW 19.86.020.

Respondent contends that it properly closed Claimant's selling account after it discovered that Claimant had violated the terms of its agreements with Respondent by engaging in fraudulent practices, which it characterized as "hit and run fraud." It further contends that the closure and retention of funds was appropriate because Claimant failed Amazon's required In-Person Verification Interview (an "IPI") four times.

V.     STATEMENT OF FACTS

Tayaydd123 registered its Amazon selling account on February 7, 2020, receiving its first order on March 14, 2020. As a condition of registration, Tayaydd123 agreed to the BSA. It also agreed to abide by Amazon's Selling Policies and Seller Code of Conduct.

From March 14 through 29, 2020, Claimant exclusively sold toys and a few kitchen items, averaging about a dozen sales a week. In March 2020, the COVID-19 pandemic first emerged and with it a global demand for personal protective equipment. On March 30, 2020, Claimant began to sell what it characterized as Nitrile disposable gloves, a product highly in demand.

3

Tayaydd123's sales immediately spiked, accelerating to $98,813 during the first two weeks of glove sales, representing a 1,100% sales increase over the prior two weeks, when it had sold $78.90 of toys and kitchen items.  With a handful of exceptions, Claimant's sales were comprised of what it characterized as Nitrile gloves.

Respondent received its first customer complaint within a week, on April 6, 2020.  By late April 2020, the trickle of complaints turned into a flood.  A sample of the more than one hundred customer complaints reveals complaints about delivery, product quality and lack of responsiveness.  A sample of customer complaints follows:

- I did not receive my order.

- After a month, I have not received the item and cannot get the seller to provide tracking or respond to requests for tracking or refund.  DO NOT BUY FROM THIS SELLER.

- what came was a package of very flimsy vinyl.

- Avoid this seller!! Never received gloves after two months! Bogus tracking number and no replies to my inquiries on the order.  They took the money and ran!

- DO NOT BUT ANYTHING FROM THIS SELLER!!! I never received my item. THIS SELLER NEEDS TO BE REMOVED FROM AMAZON WEBSITE!!!!

- Poor service.  Quick to charge my account, but I have nothing to show for it.  Amazon needs to vet its suppliers more carefully.

- The worst seller I have ever come across in any e-commerce platform. . . . After waiting for 3 months for my package he says the package might have been lost or it could be held at customs and could take another 15 days. What an asshole.  When I asked for a refund he says I can refund only 10% though it's not my fault in anyway [sic] and by the way he responded like after 10 days after I messaged him, not trustworthy.

At the same time, Amazon received nearly 650 complaints through its A-z guarantee, which allows unhappy customers to make a claim directly to it if they are unable to resolve the issue with a third party seller.  Respondent blocked Claimant's account based on what it viewed as strong indicia of fraud:  1) an over 1,100% spike in sales in two weeks; 2) a shift to sales of a COVID-19 related item from unrelated sales; 3) stalling tactics on delivery dates, which Respondent viewed as a tactic by Claimant to collect customers' money and then disappear without fulfilling orders, *i.e.,* "hit and run fraud"; 4) a negative customer feedback rating of 84%; and 5) nearly 650 A-z disputes from customers who never received their orders.

John Rutledge, a risk manager with Amazon's Funds Disbursement Bad Actor Disincentive Team, discovered other indicia of fraud.  Amazon can trace tracking numbers to determine whether and where they had been scanned.  Of Tayaydd123's 5522 sales, 1162 had bogus tracking numbers, either because they were duplicates of other tracking orders or were completely falsified.

Amazon provided notice to Tayaydd123 that it would block its account, and additionally provided its reasons for doing so, and invited an appeal.  Tayaydd123 submitted various responses that Amazon adjudged insufficient to address the issues raised.

On May 6, 2020, Amazon blocked Tayaydd123's account.  $118,835 remained in its account as of that date.  Amazon paid $13,147 in refunds to customers, retaining $105,687.71.

Tayaydd123 appealed Amazon's decision to block its account. Amazon's appeal process requires that the third party seller appear for an in person interview ("IPI"), specifically that the registered owner of the account appear. Amazon conducts IPIs virtually, to ensure that if funds are disbursed, they are disbursed to the proper party, and that no money laundering has taken place. In all, Amazon conducted four IPIs of Claimant, the first on November 2, 2022; the last on February 23, 2023.

At each IPI, Li, the legal representative of the account did not appear. Instead, Jianyu Chen, who also testified on behalf of Tayaydd123 at the evidentiary hearing, appeared. Mr. Chen was the general manager of Tayaydd123 until December 2022. Amazon informed Tayaydd123 each time that it had failed the IPI because the legal representative did not appear.

At the final IPI, Mr. Chen offered conflicting accounts of who was the legal representative of Tayaydd123. At first, he said Li was the legal representative. Then Mr. Chen said the legal representative had been changed to Zheng Xiaobing, but changed his mind a few minutes later and said it was Li. Mr. Chen also said he no longer worked for Yunnan and that he was "not the legal person." He told the IPI interviewer that he could not contact "the legal person" and then said "I don't know my legal person. I can't contact them right now," "it isn't convenient for me to disclose his whereabouts to me, and I don't have that right," and "[t]he legal person isn't necessarily required to participate, he doesn't have to contact me if he goes somewhere for fun or goes on a trip, or he can contact me through the finance department."

6

Mr. Chen told the IPI interviewer that the "legal person" knew nothing about the account; because Mr. Chen is the manager, only he could answer questions about it. However, Amazon allows managers to appear at IPIs to answer operational questions, as long as the registered owner also appears.  Amazon informed Tayaydd123 that it failed this IPI because the legal representative did not appear.

On April 3, 2023, Amazon sent a notice pursuant to Washington CR-43(f) requiring Li, as the managing agent of Tayaydd123, to appear for the evidentiary hearing.  Upon being informed by Claimant's counsel at the final status conference held on April 4, 2023 that Li would not appear, Respondent brought a motion to strike Claimant's arbitration demand.  Claimant opposed the motion.

The Tribunal denied the motion on the basis that Washington CR-43(f) is a procedural rule applicable to Washington state courts, not to arbitral proceedings. Further, whether or not Mr. Chen, the sole witness disclosed to appear on Claimant's behalf, was the managing agent of Tayaydd123, was a disputed issue of fact.

VI.   ANALYSIS

Tayaydd123 bears the burden of proof as to each of its five causes of action:  1) breach of contract; 2) breach of the implied covenant of good faith and fair dealing; 3) restitution/money had-and-received; 4) conversion; and 5) unfair business practices pursuant to RCW 19.86.020.

As explained below, Tayaydd123 failed to meet its burden of proof with respect to any of its causes of action.

A. <u>Amazon did not Breach the BSA; Tayaydd123 did</u>.

To prevail on its cause of action for breach of contract, Tayaydd123 must prove by a preponderance of the evidence *each* of the following elements: i) the existence of a contract; ii) a material breach of the contract by Amazon; and iii) resulting damage. *St. John Med. Ctr. v. State ex rel. Dep't of Soc. & Health Servs.*, 110 Wn. App 51, 64 (2002). The failure of any one of these elements dooms the cause of action.

Moreover, Tayaydd123 must also prove, as a condition precedent to its cause of action for breach of contract, that it did not breach the BSA. *See Multi-Prod. Eng'g Co. v. Bellingham Steel Prod., Inc.,* 66 Wn.2d 82, 85-86 (1965) ("a breach by a plaintiff of a material condition precedent relieves a defendant of liability under a contract."). Because it is seeking to enforce Amazon's purported payment obligations, Tayaydd123 bears the burden of proof that it did not breach the BSA. *See Silverdale Hotel Assocs. v. Lomas & Nettleton Co.,* 36 Wn. App. 762, 770, *denying review*, 101 Wn.2d 1021 (1984) ("proof of performance of an express condition precedent is a burden which must be met by the party who seeks enforcement of the contract (citation omitted)."

As explained below, Amazon did not breach the BSA; Tayaydd123 did. Thus, its breach of contract cause of action fails.

1. *Tayadd123 breached the BSA.*

When it registered its account with Amazon, Tayaydd123 agreed to comply with the terms of the BSA.

Section 13 of the BSA "Relationship of the Parties" provides that "[n]othing expressed or mentioned or implied from this Agreement is intended or will be construed

8

to give to any person *other than the parties to this Agreement* any legal or equitable right, remedy or claim under or in respect to this Agreement (emphasis added)." The parties to the BSA are Yunnan and Amazon. Yunnan is a sole proprietorship, with Li its legal representative. A sole proprietorship means that the business is owned by a single person, here Li. Accordingly, only Li has the right to enforce any "right, remedy or claim" under the BSA. As late as October 28, 2022, Li's credit card, a Mastercard ending in 3979, was registered as the payment account for Tayaydd123.

Section 18 of the BSA prohibits its transfer (and the rights thereunder) without Amazon's written consent. There is no evidence that Li transferred Tayaydd123 to Mr. Chen.

When it registered its account with Amazon, Tayaydd123 also agreed to adhere to Amazon's Selling Policies and Seller Code of Conduct ("Code of Conduct"). The Code of Conduct required Claimant to "[a]ct fairly and lawfully." The Code of Conduct included as an example of unfair activities: "[p]roviding misleading or inappropriate information to Amazon or our customers." The creation of bogus tracking numbers that Tayaydd123 provided to its customers fits squarely within this definition of an unfair activity, as did its provision of wildly inaccurate delivery dates. Customers complained about both of these unfair activities.

The Code of Conduct also characterizes as an unfair practice "allowing other people to act on your behalf in a way that violates Amazon's policies or your agreement with Amazon." Li allowed Mr. Chen to act on her behalf in violation of the Code of Conduct. Sahid Tahir, a risk manager with Amazon's Bad Actor Disincentives team,

9

testified that while a manager such as Mr. Chen can operate a third party selling account, that manager has no other rights under the BSA.  Amazon's transfer policy requires that a non-owner manager of the account, such as Mr. Chen, be added as a user to the account in order for him to provide operational services.  That never occurred here.

For all of these reasons, Tayaydd123 breached the BSA.  Because of its breach, its cause of action for breach of contract fails.  However, because Tayaydd123 argued strenuously that Amazon breached the BSA, the Tribunal examines Amazon's actions below.

2. *Amazon did not breach the BSA.*

Upon determining that Claimant "engaged in deceptive, fraudulent, or illegal activity" the BSA entitled Amazon to terminate its access to the account. *BSA* at API-3 *Termination*.  Amazon terminated Tayaydd123's access to its accounts after over 100 customer complaints and 650 A-z complaints, appropriately determining that Tayaydd123 had engaged in deceptive activities as described *supra*.  Pursuant to the BSA, Amazon provided Tayaydd123 with notice and the opportunity to appeal.

Amazon's retention of money left in Tayaydd123's account after it refunded customers' payments did not violate the BSA.  The BSA provides that *"[e]xcept* as otherwise stated in this Agreement, we will remit to you your available balance on a bi-weekly basis . . ." *BSA* at S-5 (emphasis added).  The exceptions are provided in Section 2 of the BSA:

> **If we determine that your actions or performance may result in returns, chargebacks, claims, disputes, violations of our terms or policies, or other risks to Amazon or third parties, then we may in our sole discretion withhold any payments to you for as long as we determine any related risks to Amazon or**

10

> third parties persist . . . . **If we determine that your account has been used to engage in deceptive, fraudulent, or illegal activity, or to repeatedly violate our Program Policies, then we may in our sole discretion permanently withhold any payments to you.** (emphasis in the original)

Amazon, in its sole discretion, determined that Tayaydd123 engaged in deceptive and fraudulent activities. Moreover, the evidence supports that conclusion: the bogus tracking numbers, the products that never were delivered, the multiplicity of customer complaints.

Even absent the fraudulent and deceptive activity, Tayaydd123's failure to verify its identity entitles Amazon to withhold the funds. The registered owner of Tayaydd123 failed to appear for an IPI, even though she was given four opportunities to do so and told after each one that the IPI failed because she did not appear.

Pursuant to the BSA, Tayaydd123 had the obligation to verify its identity. Section 2 of the BSA provides that a third party seller "authorize(s) us (and will provide us documentation evidencing your authorization upon our request) to verify your information (including updated information) . . . ." And pursuant to its Fund Withholding Policy, Amazon may request "additional information or documentation regarding [Claimant's] identity, financial instruments, and product sourcing."

Tayaydd123 argues that Mr. Chen, as the general manager of Tayaydd123, possessed the bona fides to represent it at the IPI. Not so, for a number of reasons.

First, Mr. Chen's contract with Tayaydd123 expired in December 2022, two months before the February 2023 IPI. The account had never been transferred to him. Mr. Chen never registered as a user. Although Mr. Chen contended that Li had no knowledge about any operational details of Tayaydd123, that is beside the point. Li could

11

have appeared at the IPI with Mr. Chen, who could have answered operational issues, if any arose.  The object of the IPI was to verify the account owner's identity, not to discuss operational details.  Without that verification, Amazon has no way of knowing whether the funds would actually go to the registered owner of the account and not to a third party.

      (i)    <u>Section 2 is not unconscionable; it is enforceable as a liquidated damages clause</u>.

Tayaydd123 argues that the BSA is a contract of adhesion and further, that it is procedurally and/or substantively unconscionable.

As an initial matter, whether or not a contract is one of adhesion is not dispositive as to whether it is procedurally unconscionable.  *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 814-15 (2009) ("[T]he fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable" (citation omitted)).  Procedural unconscionability will be found where a party lacked a meaningful choice, did not have a reasonable opportunity to understand the terms of the contract, and where important terms were hidden from view.  *Id.* at 814.

Tayaydd123 did not have to sell its products on Amazon.  That was its choice. There is no evidence that it lacked a reasonable opportunity to review the BSA before it agreed to it and its terms.  And Section 2 (providing for the permanent retention of funds upon a finding of fraud or deceptive acts) appeared on the first page of the BSA, highlighted in bold.  On this basis, the Tribunal finds that the BSA is not procedurally unconscionable.

Substantive unconscionability arises only when a disputed unilateral provision in a contract "is so one-sided and overly harsh as to render it unconscionable." *Id.* at 815 (quotation marks and citations omitted).

Tayaydd123 argues that Section 2 is substantively unconscionable because it is a penalty clause, and accordingly, cannot be enforced. Amazon contends that Section 2 is a liquidated damages clause and must be upheld.

Washington state favors liquidated damages provisions. "True liquidated damages clauses, those that are not penalties, are favored and will be upheld." *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 558 (1987) (citations omitted). Washington employs a two-part test to determine whether a liquidated damages clause is enforceable. *Id.* "First, the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second, the harm must be such that it is incapable or very difficult of ascertainment." *Id.*

Importantly, the reasonableness of the clause must be assessed as of the time the parties entered into the contract. "Reasonableness of the forecast will be judged as of the time the contract was entered." *Id.* at 559.

The withholding provision in Section 2 meets both tests. Amazon could only permanently withhold funds if it ascertained Tayaydid123 engaged in deceptive or fraudulent practices. In the absence of fraud or deceit, funds are returned after any risks (like refunds or chargebacks) are no longer at issue.

First, it is reasonable to provide at the time of contracting that in the event of fraud or deceit, Amazon will withhold all funds. As a hypothetical, what if all sales by the

13

third party seller had been fraudulent?  The withholding of all funds in that event is commensurate with the risks taken by Amazon, both with respect to potential returns, but also with respect to damage to its reputation.  This provision puts the third party on notice of what will happen if it commits fraud.

Second, It is impossible to determine the amount of damages Amazon might incur in the event of fraud.  Where future losses cannot be predicted with any certainty, Washington courts will uphold a liquidated damages provision.  *See Hornbeck Offshore Servs., LLC v. Nichols Bros. Boat Builders, Inc.,* 2008 WL 11506709, at *12 (W.D. Wash. Jan. 25, 2008).

Accordingly, the Tribunal finds that Section 2 is not substantively unconscionable.

B. Tayaydd123 has not Proven that Amazon Breached the Covenant of Good Faith and Fair Dealing.

The duty to perform contractual duties fairly and in good faith, while implied in every contract, does not operate to add, contradict, or invalidate any express contractual provisions.  *See Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F.Supp.3d 1166, 1173 (W.D. Wash. 2014), *aff'd* 691 Fed. App'x. 406 (9th Cir. 2017) ("[t]he implied duty of good faith and fair dealing . . . does not impose a free-floating obligation of good faith on the parties.")  It only requires that the parties perform their contractual obligations in good faith.  *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 636, 700 (1985).

There is no evidence that Amazon performed its contractual obligations in bad faith or unfairly.  It acted to block access to Tayaydd123's account after receiving a flood of customer complaints and demands for refunds.  It conducted four IPIs, offering

14

Tayaydd123 the opportunity to verify its identity and potentially receive the withheld funds if it did so.

The BSA provides that Amazon had the authority to permanently withhold funds upon its determination that the third party seller engaged in fraud or deception. Pursuant to Washington law, a contractual term allowing either party to terminate the contract at-will is enforceable; enforcement of an at-will termination provision does not violate the implied duty of good faith and fair dealing. *See Mayer v. Pierce Cnty. Med. Bureau, Inc.*, 80 Wn. App. 416, 422 (1995). Amazon enforced that provision after determining that Tayaydd123 acted fraudulently and deceptively, in breach of its contractual duty. The evidence supports the action that Amazon took.

C. Tayaydd123's Restitution Cause of Action Fails.

Having found that Amazon acted pursuant to the terms of the BSA, and did not breach it by terminating Tayaydd123's account and permanently withholding funds, Claimant's cause of action for restitution must fail. "The courts will not allow a claim for unjust enrichment in contravention of a provision in a valid express contract." *MacDonald v. Hayner*, 43 Wn. App. 81, 86 (1986). In other words, no equitable claim for restitution may exist if Amazon acted in accordance with the BSA, which the evidence proves it did.

Moreover, Tayaydd123 cannot assert an equitable claim for restitution because it has "unclean hands." It acted unethically in connection with the circumstances that led to this proceeding. "It is well settled that a party with unclean hands cannot recover in

15

equity." *Burt v. Washington State Dep't of Corr.*, 191 Wn. App. 194, 210 (2015) (internal quotes omitted).

    D.  <u>The Conversion Cause of Action Fails</u>.

Tayaydd123 voluntarily entered into the BSA.  The BSA provided that Amazon could "permanently withhold any payments" if it determined that Tayaydd123 engaged in deceptive or fraudulent practices.  Amazon so determined; the evidence supports Amazon's conclusion.

Conversion can only be found where a party "wrongfully received it [money]." *Alhadeff v. Meridian on Bainbridge Island, LLC,* 167 Wn.2d 601, 619 (2009).  Amazon acted in accordance with a contract that Tayaydd123 agreed to.  Accordingly, it did not "wrongfully receive" the funds, and the cause of action for conversion fails.

    E.  <u>The Unfair Business Practices Cause of Action Fails</u>.

Washington's Consumer Protection Act (the "CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  To prevail on this claim, Tayaydd123 "must prove i) an unfair or deceptive act or practice, ii) occurring in trade or commerce, iii) affecting the public interest, iv) injury to a person's business or property, and iv) causation." *Panag v. Farmers Ins. Co. of Wash.,* 166 Wn.2d 27, 37 (2009) (citations omitted).  The failure to prove any one of these elements will cause this cause of action to fail.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 784, 780 (1986).

Amazon engaged in no unfair or deceptive act or practice.  It simply acted in accordance with the terms of the BSA, to which Tayaydd123 agreed.  Claims brought

under the CPA will fail where the express contractual terms disclose and allow the conduct that is being alleged to be deceptive. *See Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 119 (2001) (no deceptive act where the contract disclosed the complained-of fee); *Smale v. Cellco P'ship*, 547 F. Supp.2d 1181, 1186, 1188-89 (W.D. Wash. 2008) (dismissing CPA claim where the contract expressly permitted the purported deceptive act).

Moreover, Amazon found that Tayaydd123 engaged in deceptive acts and responded as the BSA permitted. The evidence supports this finding. A CPA claim cannot succeed where Claimant's own conduct was the cause of the purported injury. *See Jackson v. Esurance Ins. Co.*, 2 Wn. App. 2d 470, 481 (2017).

Finally, Tayaydd123 cannot establish that Amazon's actions affected anyone but it. Therefore, it cannot satisfy the "public interest" element of a CPA cause of action. "[A] breach of a private contract affecting no one but the parties to the contract" cannot give rise to a CPA claim. *Behnke v. Ahrens*, 172 Wn. App. 281, 293 (2012).

## VII.   AWARD

Accordingly, I, the undersigned Arbitrator, AWARD as follows:

1. The claims for damages and declaratory relief of Tayaydd123 are DENIED in their entirety.

2. Amazon is the prevailing party.

3. The administrative fees of the International Centre for Dispute Resolution, the international division of the American Arbitration Association, totaling US$6,625 shall be borne as incurred and the compensation of the Arbitrator totaling US$11,602.50 shall be borne as incurred.

4. Any claim not specifically addressed in this Award is hereby denied in its

entirety.

5. This Final Award is in full satisfaction and settlement of all claims submitted to this arbitration and disposes of each and every claim. Any relief not awarded above is hereby expressly denied.

I hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Seattle, Washington, United States of America.

IT IS SO ORDERED.                               May 1, 2023

Dana Welch
Arbitrator

I, Dana Welch, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

May 1, 2023

Arbitrator